Tucker, P.
It was a question of the deepest interest at the trial, on whom the onus probandi lay? Hinchman had sworn, that Lawson had made a certain engagement to pay Green’s taxes. Lawson denied it, and charged Hinchman with peijury. Both were under equal difficulty. If, as I presume, the engagement by Lawson had been made without the privity of any other person than Hinchman, it was impossible for Hinchman to prove the truth of what he had sworn. On the other hand, it was equally difficult for Lawson to prove the negative. Availing himself, therefore, of the general principle, that he who holds the affirmative in issue, must prove it, and that no man shall be called upon to prove a negative, he resisted a motion to instruct the jury, that the burden of proof was on himself, and insisted that it was on his adversary. And the court decided, that the burden of proving the truth of the statement in the affidavit, lay on the plaintiff. As might be expected, the plaintiff could not prove what was probably a private conversation between the defendant and himself; and the jury, *697 of course, found a verdict for the defendant. Was the instruction right that led to this result ?
The rule is not universal, which forbids the proof of a negative to be thrown upon a party. It is, indeed, generally true, that the onus probandi lies upon that party who has the affirmative of the issue; a rule founded upon the difficulty, in most cases, and the impossibility in some, of proving a negative. But to this general rule, there are well established exceptions. One of these is, that where the negative involves an affirmative, the burden of proof will rest upon either the one or other party, according to other principles, and without reference to the mere formal character of the negation. Such are the cases of the pleas of infancy, fully administered, beyond the sea, and such like. Though the denial of these allegations seems to involve a negative, yet that negative has a corresponding affirmative; namely, that the defendant was of full age—that he had assets— that he was in the country. Accordingly, the question as to the onus probandi in relation to them, is not settled with reference to the difficulty of proving a negative, since either may sustain himself by proof of an affirmative.
There is another exception to the general rule. It is, that where the negative involves a criminal omission in the party, and consequently where the law upon its general principle presumes his innocence, the affirmative of the fact is presumed, and the onus is thrown upon the party alleging the criminal omission. 1 Stark. Ev. part 3. pp. 378, 9. To this effect, there have been some very strong cases in the english books. Thus, in a suit for tithes, it was held, that the defendant was bound to prove the negative allegation of his plea, that the plaintiff had not read the thirty-nine articles. So, where the plaintiff declared against the defendant who had chartered his ship, for having put on board an inflammable commodity, without notice to the master or other person of its nature, whereby the ship and cargo was burned, it was held that the plaintiff was bound to prove this negative, viz. the want of notice. Williams v. East India Company, 3 East 192, So, when a servant has been in *698 the habit of receiving money, and paying it over to his master without vouchers, the presumption is said to be, that he pays over all that he receives, and it has been held, that the master must not only prove that he has received the money, but that he has not accounted for it. Evans v. Birch, 3 Camp. 10. In Williams v. East India Company, lord Ellenborough cites the case of The King v. Coombs, Comb. 57. where the defendant swore an 'affirmative,' and an information'was exhibited against him for it: and although the negative could not be proved, yet the court directed, that the prosecutors should first give their probable evidence, and that the defendant should afterwards prove the affirmative, if he could. So, in the present case, if the oath had been given in a judicial proceeding,.and Hinchman had been indicted for perjury, the negative must have been proved, or he must have been acquitted; and had Lawson been dead, or been indorsed as prosecutor, and thereby disqualified, that must have been the result. Here, then, are cases, and strongly analogous cases, in which the negative is required to be proved. Let us see what would be the reasonable doctrine in this case.
Hinchman is here charged with perjury. The presumption of the law’is in favor of his innocence, until there is evidence produced of his guilt. The evidence of his innocence, peradventure, may not only not now be in his power, but may never have been so. The communication of Lawson may have been made, when no other person was present. He, therefore, would have as much difficulty in proving the affirmative, as Lawson in proving the negative. ’ In this state of things, it is most reasonable to throw the burden upon him who has undertaken to charge another with an infamous crime. It is for the peace and happiness of society, that no man who takes upon himself to make such a charge, should be exempted from the necessity of proving it. If he knows he cannot prove it, it is incumbent on him to be silent, or at most to meet the allegation of the fact by a bare denial. If, however, he quits the path of prudence and propriety, and charges his adversary with peijury, in *699 consequence of which he is subjected to his action, if he cannot prove his justification, he must submit to a verdict for damages. If his adversary has no character, those damages will bo nominal, but if on the other hand he is a man of fair character, is it reasonable that his oath should be discredited, merely upon a denial of the truth of what he has sworn ? that he should be branded as perjured, by a verdict for the defendant on the plea of justification, without a tittle of evidence to sustain the charge? I think not. If ho cannot be convicted of perjury on an indictment without evidence, no more should he be convicted of it in this action, upon the mere allegation of the defendant that he did not say what the plaintiff had sworn to. The consequences of a contrary doctrine, would be monstrous. Every witness who testifies to words uttered in his presence alone, would be liable at once to the foulest charge of perjury by the defendant, without any hazard, on his part, of incurring the penalty of his calumnies. The only redress of the injured party, in such a case, would be a resort to that kind of personal appeal, which it has been peculiarly the policy of the law to prevent.
Upon the whole, I am of opinion, that the instruction of the court was improper, and that the cause must go back for a new trial. The pleas are also somewhat informal and defective ; but these may bo amended before another trial.
The other judges concurred. Judgment reversed, and cause remanded for a venire de novo.