Richmond

UNITED DENTISTS, INCORPORATED V. COMMONWEALTH.

March 22, 1934.

Present, All the Justices.

The opinion states the case.

*Daniel Coleman* and *Nathaniel T. Green*, for the plaintiff in error.

*John R. Saunders, Attorney-General*, and *Venable, Miller, Pilcher & Parsons*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

We are met at the outset of this case with a motion to dismiss, on the ground that the writ of error was improvidently awarded. It is contended in the petition for the writ of error that by virtue of section 3831 of the Code, petitioner is entitled to a writ as a matter of right.

Whether or not petitioner was entitled as a matter of right to a writ of error becomes immaterial, in view of the fact that a justice of this court, during the vacation of the court, granted a writ of error to the judgment complained of and the case is on the docket of the court in the usual course.

The question is a moot one and any expressions in regard thereto would be *obiter dicta.* The motion to dismiss is therefore overruled.

This action was brought to revoke the charter of the United Dentists, Incorporated (hereafter called defendant), on the ground that it had wilfully and habitually misused and abused its corporate functions.

As the first assignment of error challenges the right of the trial court to enter upon a trial of the case upon the merits, under the circumstances hereafter adverted to, we will dispose of it before entering upon a discussion of the subsequent assignments.

When the case was called for trial upon the issue joined, the Commonwealth moved for an exclusion of all the witnesses. Counsel for the defendant resisted the motion on the ground that as the defendant was a corporation, it was entitled to have present during the trial its president, E. T. Payne, and its secretary and treasurer, Mrs. Elizabeth D. Payne. The court ruled that only one officer of the corporation was entitled to remain in the court room, and thereupon counsel elected to have Mrs. Payne remain.

Section 4906 of the Code confers upon the trial court the power, when in its sound discretion it becomes necessary, to exclude from the court room during the progress of a criminal trial, all persons whose presence is not deemed necessary. While the presence of witnesses during the trial of a civil action is not controlled by statute, there can be no doubt that the trial court, in the exercise of a sound discretion, has the power to limit the number of representatives each litigant is entitled to have remain in court during the examination of witnesses.

Especially is this true when the requested representative is to be introduced as a witness. Were the rule otherwise, it would give to the litigant whose witnesses remain in court the great advantage of having his witnesses cognizant of the testimony of each other, and the hazard of contradiction would be greatly minimized.

It is true, of course, that a corporation can be present in court only by representation through its officers, or one of them. But it does not follow that a corporation is entitled to stand upon a different footing from any other litigant. In our opinion, the rule is correctly stated in Cyclopedia of Law and Procedure, vol. 38, p. 1371, in the following language:

"Where the party is necessarily absent his agent whose presence is required by counsel on account of his knowledge of the case, should not be excluded. Where defendant is a corporation it is not error to refuse to permit an officer or employee thereof to remain for the purpose of advising with counsel, unless it appears that he has been put in control of the litigation. And where two officers of a corporation are witnesses, one of them may be put under the rule."

There is no merit in the first assignment of error.

Under the provisions of a statute since repealed, the defendant was, on the 21st day of October, 1929, granted a certificate of incorporation by the Corporation Commission of Virginia. E. T. Payne was named president; his wife, Elizabeth Dudley Payne, was named secretary and treasurer, and, together with L. B. Bowie, they constituted the board of directors. The purposes for which the corporation was formed are set forth in the charter as follows:

"Purposes: The purposes for which this corporation is formed are to employ competent licensed dentists to engage in the business of dentistry, and surgical dentistry; to perform dental operations of all kinds; to diagnose and treat diseases of lesions of the oral cavity, teeth, gums and maxillary bones; to extract teeth; to prepare and fill

cavities in teeth; to correct malposition of teeth or jaws; to engage in the manufacture and sale of pyorrhea remedies, tooth brushes, paste, mouth wash, and all forms of chemical liquids necessary for the good health of the teeth and gums; and setting of artificial teeth; to own and operate a dental laboratory; and to do any and all acts and incidental things not herein specifically enumerated that may be necessary, desirable, and convenient for the purpose of the corporation above set out." * * *

▪ Section 1640 of the Code of 1919, as amended by Acts 1930, ch. 184, p. 479, defines the practice of dentistry as follows:

"Any person shall be deemed to be practicing dentistry, who uses the word dentist, dental surgeon, the letters DDS, DMD, or any letters or title in connection with his or her name, which in any way represents him or her as engaged in the practice of dentistry, or any branch thereof, or who advertises or permits to be advertised by sign, card, circular, handbill, newspaper or otherwise that he or she can or will attempt to perform dental operations of any kind or shall diagnose, profess to diagnose, or treat or profess to treat any of the diseases or lesions of the oral cavity, teeth, gums or the maxillary bones or shall extract teeth, or shall correct malpositions of the teeth or jaws, or shall take impressions, or shall supply artificial teeth as substitutes for natural teeth, or shall place in the mouth and adjust such substitutes, or do any practice included in the curricula of recognized dental colleges, or administer or prescribe such remedies, medicinal or otherwise, as shall be needed in the treatment of dental or oral diseases, or shall use an x-ray for dental treatment or dental diagnostic purposes." * * *

▪ Section 3831 of the Code provides that any corporation which shall wilfully and habitually misuse any essential corporate function, shall thereby forfeit its charter. Proceedings to forfeit the charter of a corporation under the provisions of that section may be instituted by the Attorney-General in the name of the Commonwealth.

▪

The main allegations of the notice of motion relied upon by the Attorney-General for a revocation of the charter are, that the defendant employed and permitted E. T. Payne and Elizabeth Dudley Payne, neither of whom were duly licensed dentists, to practice dentistry, and that the corporation has repeatedly been guilty of making false statements in advertisements appearing in the Norfolk newspapers, calculated to deceive the public.

It is unnecessary to set forth the evidence in detail. The Commonwealth, to maintain the allegation that the corporation had violated the charter provisions by permitting Mr. and Mrs. Payne to unlawfully practice dentistry, introduced ten witnesses whose evidence tended to support the contention of the Commonwealth. In contradiction of the Commonwealth's evidence, the defendant introduced some fifteen witnesses. Mr. and Mrs. Payne, testifying as witnesses, denied *in toto* that they had ever practiced dentistry.

Had the case gone to the jury solely on such conflicting evidence, the verdict in favor of the Commonwealth would have been conclusive of the issue. However, to maintain the allegation that defendant had inserted false advertisements in the newspapers, the Commonwealth offered, and over the objection of defendant, the court permitted the introduction of seventeen advertisements which were *alleged* to be false. As to sixteen of these advertisements there is no evidence tending to show that they were either true or false. They were introduced *in* evidence in support of the *allegation* that they were false.

To say that allegation is not proof is but to state a truism. It was as much incumbent upon the Commonwealth to prove that the advertisements were false as it was to prove that the defendant, by or through its president or its secretary and treasurer who were not licensed dentists, was engaged in the practice of dentistry.

It is argued that to require the Commonwealth to prove the falsity of the advertisement is to place upon it the burden of proving a negative. That burden the Common-

wealth frequently assumes. In every case of forgery where the defendant is charged with forging a signature, the burden is on the Commonwealth to prove beyond a reasonable doubt that the signature is not the true signature of the alleged signer of the instrument.

In *Hinchman* v. *Lawson,* 5 Leigh (32 Va.) 695, 27 Am. Dec. 622, it is said:

"The rule is not universal, which forbids the proof of a negative to be thrown upon a party. It is, indeed, generally true, that the *onus probandi* lies upon that party who has the affirmative of the issue; a rule founded upon the difficulty, in most cases, and the impossibility in some, of proving a negative. But to this general rule, there are well-established exceptions. One of these is, that where the negative involves an affirmative, the burden of proof will rest upon either the one or other party, according to other principles, and without reference to the mere formal character of the negative. Such are the cases of the pleas of infancy, fully administered, beyond the sea, and such like. * * *

"There is another exception to the general rule. It is, that where the negative involves a criminal omission in the party, and consequently where the law upon its general principle presumes his innocence, the affirmative of the fact is presumed, and the *onus* is thrown upon the party alleging the criminal omission."

In *Clifton* v. *Weston,* 54 W. Va. 250, 46 S. E. 360, 364, quoting from 5 Am. & Eng. Ency. L. 28, the rule is stated as follows:

"If, regardless of terms, it is borne in mind that when the issue is joined he has the burden of proof who seeks to move the court to act in his favor, the question of whether the grounds of his claim are alleged affirmatively or negatively is really of no consequence. And if the term 'affirmative' is insisted upon as being inseparable from the 'burden of proof,' it must be remembered that the affirmative of the issue does not depend upon the form of the pleading, but the rule is concerned

with the substance of the issue, and that only. Therefore, where the proof of negative matter is essential to the maintenance of a cause of action, this may necessitate a negative averment, and the plaintiff has the burden of proving it, because looking at the substance of the issue as a whole, he must be regarded as asserting the affirmative thereof."

In *Colorado Coal Company* v. *United States,* 123 U. S. 307, 8 S. Ct. 131, 31 L. Ed. 182, it is said (syllabus):

"In a suit by the United States to cancel a patent of public land the burden of producing the proof and establishing the fraud is on the Government, from which it is not relieved although the proposition which it is bound *to establish may be of a negative nature.*

■ "When a plaintiff's right of action is grounded on a negative allegation, which is an essential element in his case, or which involves a charge of criminal neglect of duty or fraud by an official, the burden is on him to prove that allegation, the legal presumption being in favor of the party charged."

See, also, Stephen's Digest of the Law of Evidence, article 93; *Richmond Ice Co.* v. *Crystal Ice Co.,* 103 Va. 465, 49 S. E. 650; 1 Greenleaf on Evidence, section 78; *Colorado Coal Co.* v. *United States,* 123 U. S. 307, 8 S. Ct. 131, 31 L. Ed. 182.

■ In accentuation of the error in allowing the advertisements to go to the jury without proof of their falsity, the court of its own motion and over the objection of defendant, instructed the jury, "that in considering the *advertisements* introduced in evidence the jury are to determine from *all* the testimony before them whether or not such advertisements are wilfully false." (Italics added.)

The vice in the instruction is that it gave the jury free rein to conclude that if the testimony of defendant's witnesses was false, *a fortiori* the advertisements were false. Such a conclusion does not necessarily follow. It may be true that the charter of defendant should be forfeited on

proof that it was unlawfully permitting its employees who were not licensed dentists to practice dentistry; but that is an issue separate and distinct from the issue of whether or not defendant was guilty of issuing false advertisements. The truth or falsity of the latter depended upon proof independent of the former.

It is impossible to tell whether the jury based its verdict on the proof introduced that defendant was aiding or abetting the Paynes to unlawfully practice dentistry, or based its verdict on the allegation that the advertisements were false. In the face of such a dilemma we are unable to conclude that there has been a fair and impartial trial upon the merits of the case. With the exception of the court's instruction, no objection was made to the giving of the other instructions.

It is further assigned as error that the court erred in refusing to give this instruction:

"The court instructs the jury that they have no right to presume or assume that any of the advertisements introduced in evidence are untrue, but the Commonwealth must prove by a preponderance of the evidence that the advertisements or any of them are untrue; and that they were wilfully and habitually published for the purpose of deceiving and defrauding the public."

From what has been said it follows that we are of opinion that the instruction should have been given.

It was not error to refuse defendant's instructions "A" and "C." The language in these instructions, that the burden is on the Commonwealth to *satisfy* the jury by evidence that the advertisements were designedly and purposely false, is too broad. "To satisfy" means "To free from doubt, suspense, or uncertainty; to give assurance to; to set at rest the mind of." * * * Webster's New International Dictionary.

The case at bar does not involve a criminal prosecution, and hence the burden was not upon the Commonwealth to prove the guilt of the defendant beyond a rea-

sonable doubt. The burden resting upon the Commonwealth is clearly set forth in the instruction refused *supra*, viz: "To prove by a preponderance of the evidence that the advertisements or any of them are untrue."

The judgment of the trial court will be reversed and a new trial awarded in accordance with the views expressed in this opinion.

*Reversed.*

EPES, J., concurring in conclusion.