# COURT OF APPEALS OF VIRGINIA

## Record No. 0104-25-1

REFUND RECOVERY SPECIALIST, LLC

v.

CITY OF NORFOLK, VIRGINIA, A MUNICIPAL CORPORATION
BY AND THROUGH ITS TREASURER, DUAN HESTER

Present: Judges Athey, Friedman and Callins

Argued at Williamsburg, Virginia

Opinion Issued June 16, 2026

### FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

A. Blake Gayle (Zwerdling, Oppleman, Adams & Gayle, on briefs), for appellant.

Christopher W. Palermo-Re, Assistant City Attorney, for appellee.

### PUBLISHED OPINION BY
### <u>JUDGE FRANK K. FRIEDMAN</u>

This is a case where the property owner's failure to pay a relatively small tax arrearage

resulted in the heirs to the land losing any claim to the parcel—a property appraised at over

$330,000. The appeal arises out of a civil action to sell tax-delinquent real estate. The main

issue involves the interpretation of Code § 58.1-3967: specifically, whether heirs of a former

homeowner are entitled to a lienholder's unclaimed surplus funds after a tax sale, or whether the

surplus escheats to the City of Norfolk (City) by operation of the statute. The circuit court found

that under Code § 58.1-3967, the heirs would only be entitled to recover surplus funds, if any,

that exceeded a Citibank lien on the home and that those surplus funds would be submitted to the

clerk of the circuit court until the time for making claims had expired. The court then went

further and dismissed the heirs' petition, concluding that, by operation of Code § 58.1-3967, any surplus funds must be awarded to the City if unclaimed after two years.

BACKGROUND

*The Property's History in the Smith Family*

By a deed recorded in the clerk's office of Princess Anne County, Ralph and Lessie Smith bought a parcel of real property at 133 Hicks Avenue, Norfolk, Virginia (Property) on April 7, 1957. Ralph died on February 2, 2002, and his interest in the Property passed to Lessie. On March 12, 2007, Lessie executed a credit line deed of trust in favor of Citibank, National Association (Citibank).[1] There is no indication in the record of any debt existing on this line of credit. Lessie died intestate on August 3, 2019.

*The City Files a Complaint Resulting in a Tax Sale*

In January 2023, the City filed a complaint in the circuit court requesting that the Property be sold to satisfy delinquent real estate taxes totaling $6,984.15. The City filed an amended complaint in February 2023 listing defendant Charles B. Thomas as "Trustee for a certain Credit Line Deed of Trust from Lessie M. Smith, dated March 12, 2007, Recorded in Instrument No. 070015008 on April 17, 2007, in the Circuit Court of the City of Norfolk, to secure the principal sum of $200,000.00 for the benefit of the defendant, Citibank . . . ." As part of the original tax delinquency case, a real estate appraiser assessed the Property's fair market value at $334,000.

---

[1] "'*Credit line deed of trust*' means any deed of trust, mortgage, bond, or other instrument entered into after July 1, 1982, in which title to real property located in the Commonwealth is conveyed, transferred, encumbered, or pledged to secure payment of money, including advances or other extensions of credit to be made in the future." Code § 55.1-318.

On October 23, 2023, the Property was sold at auction pursuant to Code § 58.1-3965 for $220,200. This sum was well below the Property's appraised value. The circuit court approved the sale to satisfy the tax lien.

On November 21, 2023, the court entered an order of confirmation of scheme of disbursement. The court ordered payment of $10,473.50 in taxes, $14,900 in attorney fees, and $25,494.36 in costs of action, leaving a surplus of $169,332.14 from the $220,200 sales price. The court ordered that the surplus proceeds be paid into the registry of the City of Norfolk Circuit Court and be held pursuant to Code § 58.1-3967.[2] Additionally, the court ordered "that if no claim to such surplus funds be made within two years of the date of the confirmation of the sale of the subject property by the decree of this Court dated October 23, 2023, then said Clerk shall pay said sum to the Treasurer for the City of Norfolk."

*The Heirs of Lessie Smith File a Claim and Move for Default Judgment*

On June 3, 2024, Refund Recovery Specialist, LLC (Refund Recovery) filed a Petition to Claim Surplus Funds on behalf of the heirs of Lessie Smith. The "Petition to Claim Surplus Funds" provided that:

- The Surplus funds "are being held for the benefit of the heirs . . . of the former owners."
- Lessie Smith died intestate, leaving the identified heirs as her sole heirs-at-law pursuant to Va. Code § 64.2-200.

---

[2] Code § 58.1-3967 reads in pertinent part:

> If no claim for payment of the indebtedness secured by any lien chargeable thereon is made by an unknown beneficiary of such lien, or if no claim for such surplus is made by such former owner or his heirs . . . or assigns within two years after the date of confirmation of such sale, then such amount secured by the lien of the unknown beneficiary, surplus, or both, as applicable, shall be paid by the clerk of the court in which such suit was instituted to the county, city, or town that received proceeds from the sale of the real estate.

- Refund Recovery contracted with the heirs and was entitled to collect the surplus funds on their behalf.[3]
- Citibank has a lien, but Refund Recovery "disputes that any sums are due and owing on the credit line secured by the" deed of trust.
- The heirs request "disbursement of the Surplus Funds" to them.

In the petition, Refund Recovery acknowledged that "the Surplus Funds may be subject to the lien of [Citibank] . . . pursuant to a Credit Line Deed of Trust from Lessie Smith dated March 12, 2007." A copy of the petition was sent to Citibank, but Citibank did not respond to the filing.

On October 10, 2024, Refund Recovery moved for entry of default judgment, claiming that Citibank's failure to file pleadings in response to its petition rendered the lien holders "in default pursuant to Virginia Supreme Court Rule 3:19."[4]

*The Court's Rejection of Refund Recovery's Default Judgment Claim and the Court's Dismissal of the Petition*

A hearing on the default judgment motion was scheduled for December 11, 2024, but counsel for Refund Recovery failed to appear.[5] That same day, after missing the hearing, counsel for Refund Recovery sent a letter of apology to the court and requested that the matter be rescheduled. On December 13, 2024, however, the circuit court issued an order denying both

---

[3] Refund Recovery's contracts with the heirs (attached as Exhibit B to its petition) were the putative basis for Refund Recovery's standing to file the petition on the heirs' behalf. *See Green v. Portfolio Recovery Assocs., LLC*, 83 Va. App. 28, 88 (2024) ("Our contract law standing doctrine governs standing in debt collection cases."). No challenge has been raised regarding Refund Recovery's standing here. *See Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 102 n.5 (2008) ("The Plaintiffs' standing to bring this action was not challenged in the circuit court and thus is not a question before this Court."); *Martin v. Ziherl*, 269 Va. 35, 39 (2005) (holding that the failure to challenge standing at the trial level precludes this Court from considering the issue on appeal).

[4] There is an affidavit of service in the record indicating service of the petition alone to Citibank, with no mention of a summons. Shortly after Refund Recovery filed its motion for default judgment, the circuit court entered a final decree in the City's tax sale proceeding. This prompted Refund Recovery to file a "Motion to Reinstate on Active Docket," which the circuit court granted. Refund Recovery mailed that motion to Citibank on November 21, 2024.

[5] The only issue noticed or scheduled to be heard at the December 11, 2024 hearing was Refund Recovery's motion for default judgment.

Refund Recovery's motion for default judgment and its petition. With respect to the petition, the court reasoned that a lien creditor had a legal obligation to release a lien upon payment of the debt, and since that had not occurred here it was reasonable to presume that the debt was not satisfied. Moreover, the petition did not assert that the debt had been satisfied. Additionally, the court noted that the petition did not allege that the governing statute barred enforcement. The court also observed that under Code § 58.1-3967, the heirs were only entitled to surplus funds that exceeded "any liens chargeable" against the Property, but it found no surplus exceeding Citibank's lien. The order found that Refund Recovery's allegations were deficient and awarded the City attorney fees under Code § 8.01-271.1.[5] The court also directed "Counsel for the City of Norfolk to submit [an] application for attorneys' fees pursuant to Virginia Code § 8.01-271.1." The City, however, never sought additional fees.

*Refund Recovery's Motion to Reconsider*

Refund Recovery filed objections to the final order as well as a motion to reconsider. In both filings, Refund Recovery specifically objected "to the denial of the Petition to Claim Surplus Funds . . . filed on behalf of the heirs of the former owners of the subject property . . . as the denial of the Petition effects an unconstitutional taking." Refund Recovery cited *McKeithen v. City of Richmond*, 302 Va. 422 (2023), to support its position that awarding the proceeds to the City instead of the heirs would amount to an unconstitutional taking. Refund Recovery asserted that it was one thing to deny the motion for default judgment—but quite another to dismiss the petition entirely. The motion to reconsider explained scenarios by which the heirs could recover the disputed funds; the motion, however, was not ruled upon. Refund Recovery now appeals. It argues that the circuit court erred in denying its motion for default judgment, in dismissing its petition, and by awarding "sanctions" to the City in the form of attorney fees.

---

[5] These fees were in addition to the fees already awarded as part of the tax sale.

ANALYSIS

I. Standard of Review

This Court "review[s] questions of statutory interpretation de novo." *Calway v. City of Chesapeake*, 79 Va. App. 220, 225 (2023). It "also review[s] de novo '[a] circuit court's interpretation of a statute or ordinance and its application of that statute or ordinance to the facts of a case.'" *MAD Props., LLC v. City of Augusta*, 83 Va. App. 141, 155-56 (2024) (second alteration in original) (quoting *Prince William Bd. of Cnty. Supervisors v. Archie*, 296 Va. 1, 9 (2018)). "But where the appeal presents a mixed question of law and fact, '[the Court] must afford deference to the trial court's factual findings.'" *Id.* (quoting *Ferguson v. Stokes*, 287 Va. 446, 450 (2014)).

II. The Circuit Court Did Not Err in Denying Refund Recovery's Motion for Default Judgment

Refund Recovery argues that the circuit court erred when it denied its motion for default judgment against Citibank because, as Refund Recovery puts it, "Citibank did not respond to the Petition." Refund Recovery asserts that Code § 58.1-3967 "allows Citibank two years from November 21, 2023, to claim some or all of the Surplus funds." Refund Recovery goes on to say that despite this, "if it is determined that no money is due and owing to Citibank . . . then there is no need to wait and see if Citibank makes a claim." Refund Recovery sums up by stating that the circuit court should have awarded it default judgment against Citibank because "Citibank failed to timely respond to [the] Petition . . . ."

The City contends that the circuit court did not err, and even if it did, this Court should decide the case on the "right result for the wrong reason doctrine." The City reasons that "[u]nder the facts of the instant case, a responsive pleading was not 'prescribed' under Rule 3:8 and Appellant's efforts to seek a default judgment pursuant to Rule 3:19 were contrary to law." The City asserts that Refund Recovery never properly served Citibank with a summons or a

complaint. Under this logic, default judgment against Citibank would have been inappropriate because service was inadequate.

The circuit court did not address the service argument. Instead, the circuit court concluded that Refund Recovery's filings were meritless and deficient—to the point that it dismissed the petition and invited the City to seek attorney fees under Code § 8.01-271.1 for its time in addressing the petition and motion for default judgment.

Under the right-result-different-reason principle, this Court can uphold a correct circuit court decision on an alternative ground "as long as the record contains sufficient information to support the proper reason." *Tessema v. Moulthrop*, 86 Va. App. 24, 34 (2025) (quoting *Haynes v. Haggerty*, 291 Va. 301, 305 (2016)).

Refund Recovery sought relief for a perceived violation of Rule 3:19. "A defendant who fails to timely file a responsive pleading as prescribed in Rule 3:8 is in default." Rule 3:19. But this presupposes that Rule 3:8 applies and that, if it does, the party has been properly haled into court. A defendant is only in default if responsive pleadings are "prescribed" by Rule 3:8. Notably, Rule 3:8 outlines the procedures for filing a response to a pleading that *commences* an action. It states that "[a] defendant must file pleadings in response within 21 days after service of the summons and complaint upon that defendant . . . ." Rule 3:8(a).

Here, the City filed a suit for a tax delinquency which triggered a tax sale. Refund Recovery purported to file a claim on behalf of the heirs. Its petition did not signify the commencement of a new action; rather, it was a subsequent pleading filed by the heirs in the City's action. And even if its attempt to bring Citibank into the fray were subject to Rule 3:8, here, Refund Recovery did not serve Citibank with a summons or a complaint as contemplated by Rule 3:8. Accordingly, Citibank did not violate Rule 3:8 by not responding to Refund Recovery's pleading, and imposing default judgment against Citibank would be inappropriate

under these circumstances. The circuit court therefore did not err in denying Refund Recovery's motion for entry of judgment by default.

### III. The Circuit Court Improperly Dismissed Refund Recovery's Petition On This Record

#### A. The Heirs Possessed a Colorable Claim to the Sale Proceeds

Refund Recovery argues on appeal that the circuit court erred in throwing out its petition. It argues that the heirs have a valid claim to the proceeds pursuant to the holding of the Supreme Court of Virginia in *McKeithen*.[6] Specifically, Refund Recovery argues that the heirs to the Property "have a valid claim to the Surplus Funds in excess of any balance due on Citibank's credit line." Refund Recovery contends, as it did below, that "[i]f Citibank fails to make its claim within two years from November 21, 2023, then the heirs of the former owners of the Property should receive all of the Surplus Funds pursuant to the Virginia Supreme Court's ruling in [*McKeithen*, 302 Va. 422]." Indeed, on this record, Citibank did fail to make any such claim within this timeframe. The circuit court, however, summarily dismissed the petition filed on behalf of the heirs and awarded the funds to the City.

In dismissing the petition, the circuit court looked to the language of Code § 58.1-3967 and concluded that, by operation of the statute, the City was the correct recipient of the surplus funds. We agree with Refund Recovery that the circuit court erred in dismissing the petition based solely on its reading of Code § 58.1-3967—without considering whether the Citibank lien

---

[6] Refund Recovery raised this argument in its objections to the final order and in its motion to reconsider, where it argued "Code § 58.1-3967 as applied in the Order effects an unconstitutional taking from the heirs of the former owners of the subject property." (Citing *McKeithen*, 302 Va. 422). *See Cherry v. Lawson Realty Corp.*, 295 Va. 369, 373 (2018) (holding that so long as the court has "the opportunity to consider" objections, those objections are preserved for appeal and noting that, under Code § 8.01-384, "[a]rguments made at trial via . . . recital of objection[] in a final order" can be deemed preserved unless withdrawn or waived (alterations in original)).

was chargeable against the Property and whether the circuit court's application of the statute to these facts would effect an unconstitutional taking in this case.

1.  The Record Did Not Establish Whether the Lien Was Chargeable Against the Property, Rendering Dismissal Premature

The disposition of surplus funds from city tax sales of property is governed by Virginia Code § 58.1-3967.  The statute entitles the former owner of the real property only to those surplus funds that exceed recorded liens chargeable against property:

> The former owner, his heirs or assigns of any real estate sold under
> this article shall be entitled to the surplus received from such sale
> in excess of the taxes, penalties, interest, reasonable attorneys'
> fees, costs, and *any liens chargeable thereon*.

*Id.* (emphasis added).  Here, the circuit court found no surplus "in excess of . . . any liens chargeable" against the Property.[7]  It presumed that Citibank's lien reflected a debt chargeable against the Property because no certificate of satisfaction released the lien.

The circuit court's presumption, however, is not well grounded because the record does not show that a certificate of satisfaction would have been required here.  Under Code § 55.1-339, requirements for certificates of satisfaction "shall apply to a credit line deed of trust prepared pursuant to § 55.1-318 *only when the obligor or the settlement agent has paid the debt in full and requested that the instrument be released*."  (Emphasis added).  Here, the record (at this juncture) lacks evidence of an outstanding fixed debt, payment of a debt, or any request for releasing the instrument.  These facts would not trigger a need for a certificate of satisfaction, so the circuit court's presumption of an outstanding debt lacked an appropriate foundation.

Existence of an underlying debt and default affect whether and to what extent Citibank's lien would be "chargeable" against the Property.  *See, e.g.*, Code § 55.1-320(7) (providing that

---

[7] The surplus after taxes, fees, costs, and attorney fees was $169,332.14.  Citibank's credit line deed of trust was for $200,000.

default is a condition precedent to taking property secured by a deed of trust). Credit line deeds of trust generally only would be "chargeable" against a property if the former owner defaulted on a secured debt—information that is not in the record.[8] *See id.* (authorizing the trustee to declare debts secured by a deed of trust payable upon default). Unlike judgment liens or purchase-money deeds of trust that secure a fixed debt, a credit line deed of trust may secure "extensions of credit to be made in the future." Code § 55.1-318. Considering that it could secure future credit, a credit line deed of trust does not necessarily reflect indebtedness. *Id.* Here, the record does not show any fixed debt or default under the credit line deed of trust, so the circuit court prematurely treated Citibank's lien as chargeable against the Property.[9]

### 2. Refund Recovery Raised the Constitutional Taking Issue and the Court's Summary Dismissal of the Petition Was Erroneous

Even if the credit line deed of trust were chargeable against the Property, we would still need to evaluate whether the circuit court's application of Code § 58.1-3967 created an unconstitutional taking here. Code § 58.1-3967 specifically anticipates cases where a secured lender fails to claim indebtedness secured by a chargeable lien:

> If no claim for payment of the indebtedness secured by any lien chargeable thereon is made by an unknown beneficiary of such lien . . . within two years after the date of confirmation of such sale, then such amount secured by the lien of the unknown beneficiary . . . shall be paid by the clerk of the court in which such suit was instituted to the county, city or town that received proceeds from the sale of the real estate.

---

[8] Generally, equity requires that the amount of debt be established prior to foreclosure. *See, e.g.*, *Hudson v. Barham*, 101 Va. 63, 67 (1903) (holding that a trustee in a deed of trust should "ascertain the actual debt which ought to be raised by the sale" of property, and a debtor has a right to such information).

[9] Although Refund Recovery unquestionably bore the burden of proving its petition, the circuit court should have allowed it to present evidence about the lack of outstanding debt, rather than dismissing the entire case after a scheduled hearing on a motion for default judgment.

*Id.* Here, Citibank failed to claim against the Property within the two-year statutory timeframe, so Code § 58.1-3967 directed payment of surplus funds to the City. *Id.* Whether such direction was constitutional under these facts warrants additional analysis.

In *McKeithen*, our Supreme Court found that application of Code § 58.1-3967 may be unconstitutional as applied in certain circumstances. 302 Va. at 441. In that case, the circuit court's registry held surplus funds from a tax sale of property that covered the full debt of a priority lien and a portion of a subordinate lien.[10] *Id.* at 429. When the priority lienholder failed to make a timely claim, the subordinate lienholder, the Caldwell Trust, claimed the surplus remainder. *Id.* at 430. The Supreme Court of Virginia, interpreting Code § 58.1-3967, determined that the funds escheated to the City and not to the subordinate lienholder by operation of the statute. *Id.* at 434-35. The Court reached this decision after hypothetically considering that similarly situated heirs of a deceased former owner would face the same result. *Id.* at 434. But the Court then held that the statute was unconstitutional as applied because the City did not have a property interest in the funds whereas the subordinate lien holder had such an interest. *Id.* at 440. In other words, the lienholder's claim to the funds was superior to the City's claim, so the City should not take the funds.

The *McKeithen* decision further reasoned that even though the plain language of Code § 58.1-3967 may call for surplus funds to escheat to the City, once the City is fully paid its tax arrearage, its claim upon the funds is inferior to those with valid, existing, unpaid liens. The Court explained:

> Under equitable principles, the very notion of superior and inferior
> liens presupposes that the former take precedence over the latter
> with respect to the same proceeds. *See Buchanan v. Clark*, 51 Va.

---

[10] *McKeithen* did not involve a credit line deed of trust, so it did not resolve whether a credit line deed of trust, without a fixed underlying debt, is "chargeable" against property. Instead, it involved a deed of trust securing a fixed debt and a judgment lien. *McKeithen*, 302 Va. at 429.

- 11 -

(10 Gratt.) 164, 177 (1853); *Haleys v. Williams*, 28 Va. (1 Leigh) 140, 140 (1829).

302 Va. at 438. The Court then observed:

> In this case, the City does not dispute that it laid claim to the abandoned . . . proceeds solely by operation of the escheat mandated by Code § 58.1-3967 and does not assert any specific public-use justification. The City had been fully compensated for its tax lien and had no other basis in law or equity to receive the unclaimed surplus proceeds.

*Id*. at 439.

Thus, in the queue for payment, the fully-paid City should not be permitted to leap-frog unsatisfied lienors or unpaid heirs with respect to collecting the surplus. To do so, *McKeithen* determined, would be an unconstitutional taking:

> The fully compensated City has no property interest whatsoever in the unclaimed surplus. As applied to this particular scenario, Code § 58.1-3967 unconstitutionally authorized the City to take these proceeds from the unsatisfied lienor and to keep them for it itself.

*Id*. at 440.

Refund Recovery acknowledges "that Citibank has superior claim to the Surplus Funds pursuant to its Credit Line Deed of Trust to the extent that monies are due and owing on that Credit Line Deed of Trust." But, Refund Recovery observes, "[t]here is no evidence that there are any amounts due and owing on the credit line, and there is certainly no evidence that the amounts due and owing on the credit line exceed the amount of Surplus Funds." Thus, it concludes, it was error to summarily dismiss its petition.

Refund Recovery's logic is consistent with *McKeithen*—which was decided less than two months before the circuit court's ruling. The City received its tax payments—the heirs have not recovered any funds. The Bank has not appeared. The circuit court plainly made its ruling based on its interpretation of the statute. It did not consider, as *McKeithen* instructs, whether its

application of the statute operated as an unconstitutional taking under Article 1, Section 11 of the Constitution of Virginia.[11] Nor did the circuit court give Refund Recovery any opportunity to demonstrate the merits of its claim to the surplus funds.

### B. The Procedural Posture of This Case Further Militates Against Summary Dismissal

The hearing that counsel for Refund Recovery missed was noticed to "present argument in support of the Motion for Entry of Judgment by Default . . . ." It was not noticed to address the validity of the petition. The circuit court, nonetheless, summarily dismissed the petition after the hearing on the alleged default. The circuit court based its decision to dismiss Refund Recovery's petition, in part, on the language in Code § 55.1-339, which requires a lien creditor to file a certificate of satisfaction in certain circumstances. Thus, because Citibank failed to file such a certificate, the court reasoned, the court "presumes that the debt remains unpaid." However, the record is undeveloped as to the status of the debt, if any. And, in any event, presumptions can be overborne by evidence. *See Kiddell v. Labowitz*, 284 Va. 611, 622 (2012).

Here, Refund Recovery promptly informed the circuit court that the heirs possessed a colorable claim to the remaining proceeds; it argued the heirs were entitled to recover because:

1. Va. Code §58.1-3967 as applied in the Order effects an unconstitutional taking from the heirs of the former owners of the subject property. *McKeithen v. City of Richmond*, 302 Va. 422, 893 S.E.2d 369 (2023).

2. Pursuant to *McKeithen*, the heirs of the former owner of the subject property ("Heirs") have a claim to the surplus funds

---

[11] Refund Recovery put the circuit court on notice of *McKeithen* in written objections pursuant to Code § 8.01-384, and it did so at its first available opportunity after the circuit court dismissed the petition along with the motion for default judgment. *See Commonwealth v. Amos*, 287 Va. 301, 306 (2014) (under Code § 8.01-384(A), objection is not waived if there is no opportunity to object contemporaneously); *Maxwell v. Commonwealth*, 287 Va. 258, 266-67 (2014) (objection at first available opportunity is not a waiver where there was no opportunity for a contemporaneous objection). Refund Recovery also filed a motion for reconsideration raising the issue. We find that Refund Recovery adequately placed the circuit court on notice that its claims to the funds remained viable at the time the circuit court dismissed its petition.

that is superior to the claim of the City of Norfolk. *Id.* Therefore, if no other interested parties, such as lienholders, claim the surplus funds during the statutory period then the surplus funds must be paid out for the benefit of the Heirs as requested in the Petition to Claim Surplus Funds by Refund Recovery Specialist LLC ("Petition") previously filed herein.

Refund Recovery attached the *McKeithen* decision to its filing.

Nonetheless, the circuit court essentially found that the heirs could not recover the money by operation of Code § 58.1-3967—it concluded that, under the statute, if the lienholder did not come forward, then the City would recover the surplus fund. Thus the circuit court denied the heirs' petition with prejudice. We disagree with this conclusion particularly at this juncture of the proceedings. We find that the dismissal of the heirs' claims was premature on this record. No hearing or briefing was ever held on the petition's validity or on the merits of the heirs' claim. We remand the case to the circuit court for a determination of the proper distribution of the surplus funds.[12]

IV. The "Sanctions" Issue is Not Ripe

Refund Recovery takes issue with the circuit court's order for it to pay the City's attorney fees based on its motion for default judgment. The City characterizes the circuit court's order as an imposition of sanctions against Refund Recovery. The circuit court laid out the framework for imposing attorney fees as part of its final order, stating simply that "[t]he court DIRECTS Counsel for the City of Norfolk to submit his application for attorneys' fees pursuant to Virginia Code § 8.01-271.1." Code § 8.01-271.1 states:

> The signature of an attorney . . . constitutes a certificate by him that (i) he has read the pleading . . . , (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law

---

[12] We agree with the concurrence that Refund Recovery ultimately bears the burden of proving its claim on remand; however, Refund Recovery simply was denied a meaningful opportunity to provide evidence or advance its claim below. Ultimately, it was error for the circuit court to summarily dismiss the petition on this undeveloped record.

or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass.

Refund Recovery argues that it was error for the court to order attorney fees because Refund Recovery's motion was "proper considering the Supreme Court ruling in *McKeithen*." Refund Recovery thus asserts that the circuit court should not have awarded the City attorney fees. The City responds by arguing that the circuit court did not abuse its discretion in awarding attorney fees because Refund Recovery failed to cite any "precedent that would justify its efforts to seek payment [of the surplus funds] through default judgment prior to the expiration of the statutorily mandated two years."

At oral argument, the City acknowledged that it never sought attorney fees below—and it did not plan to. Accordingly, the issue is not ripe for appellate review and we decline to reach it. *See Berry v. Bd. of Supervisors*, 302 Va. 114, 131 (2023) (explaining that a case is not ripe if it has "yet to mature into a justiciable controversy—that is, an actual controversy between the parties that is not based solely on speculation or purely hypothetical scenarios"). Any ruling we might make would be purely advisory—and advisory decisions are strongly discouraged. *See Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998) (declining to render an advisory opinion). Indeed, courts have "no authority 'to declare principles or rules of law which cannot affect the matter in issue . . . before it.'" *Rebh v. Cnty. Bd. of Arlington Cnty.*, 303 Va. 379, 380 (2024) (quoting *Hankins v. Virginia Beach*, 182 Va. 642, 644 (1944)).

## CONCLUSION

To sum up, the two-year time period for Citibank to come forward to claim any indebtedness under Code § 58.1-3967 has now passed. We remand the case for a hearing on the

- 15 -

heirs' claims and for proceedings consistent with Code § 58.1-3967.  For the foregoing reasons,

the circuit court's judgment is affirmed in part, reversed in part, and remanded.

*Affirmed in part, reversed in part, and remanded.*

Athey, J., concurring in part, and concurring in the judgment.

There is no dispute that Mrs. Smith executed a credit line deed of trust in 2007 "to secure the principal sum of $200,000.00 for the benefit of . . . Citibank," thereby encumbering the subject property. But the majority concludes that "the circuit court erred in dismissing the petition . . . without considering whether the Citibank lien was chargeable against the property," finding it significant that there is no evidence in the record that Mrs. Smith borrowed from the line of credit secured by the deed of trust. I write separately to explain why I do not assign any particular significance to the absence of such evidence in the record.

A "credit line deed of trust" is defined, in relevant part, as "any deed of trust . . . entered into after July 1, 1982, in which title to real property located in the Commonwealth is conveyed, transferred, encumbered, or pledged to secure payment of money, including advances or other extensions of credit to be made in the future." Code § 55.1-318(A). By statute, a "credit line deed of trust shall specify the maximum aggregate amount of principal to be secured at any one time." Code § 55.1-318(B). The execution of a credit line deed of trust creates a lien on the underlying property. *See* Code § 55.1-318(C); *Deutsche Bank Nat'l Tr. Co. v. Arrington*, 290 Va. 109, 117 (2015). And once executed, a "deed of trust remains a lien until the debt it was given to secure is satisfied." *Artrip v. J.S. Rasnake & Son*, 96 Va. 277, 284 (1898).

Code § 55.1-339 provides for the release of a deed of trust when a certificate of satisfaction and affidavit confirming satisfaction of the secured debt are filed in the clerk's office wherein the deed of trust was recorded. For a duly prepared credit line deed of trust, a creditor "shall issue a certificate of satisfaction" "only when the obligor or the settlement agent has paid the debt in full and requested that the instrument be released." Code § 55.1-339(B).

Here, the "principal sum" of the credit line deed of trust was $200,000. Assuming this represented "the maximum aggregate amount of principal to be secured at any one time," Code

§ 55.1-318(B), Citibank could have had a $200,000 lien on the subject property. But, as the majority notes, there is a distinct possibility that no advances were made on the credit line secured by the deed of trust, such that the amount of Citibank's lien was $0. Thus, the majority concludes, the circuit court was wrong to presume—from the absence of a filed certificate of satisfaction releasing the lien—that the credit line deed of trust represented a lien chargeable against the subject property. I must respectfully disagree with the majority's conclusion. Although there was no evidence in the record that Mrs. Smith had received any advances on the credit line, it remained Refund Recovery's burden to prove its entitlement to any surplus funds.

Our Supreme Court has long held that the party "requesting the court to act in his favor . . . must prove the facts which establish that he is entitled to the relief sought." *Sachs v. Horan*, 252 Va. 247, 250 (1996); *see United Dentists, Inc. v. Commonwealth*, 162 Va. 347, 355-56 (1934); *Hinchman v. Lawson*, 32 Va. (5 Leigh) 695, 696-697 (1834). Consistent with that general maxim, the General Assembly amended Code § 58.1-3967 in 2025 to expressly place the burden of proof "on the claimant to prove" entitlement to surplus funds. *See* 2025 Va. Acts ch. 267. Hence, I view this action by the General Assembly as a codification of the preexisting common-law rule. *See Herndon v. St. Mary's Hosp., Inc.*, 266 Va. 472, 476 (2003) ("[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested."). So, while it is true that when Refund Recovery petitioned to recover any surplus funds on behalf of Mrs. Smith's heirs, Code § 58.1-3967 failed to specifically allocate the burden of proof for establishing entitlement to surplus funds generated by a tax sale, Refund Recovery was required to prove that it was entitled to surplus funds.

In this case, there was neither any evidence showing whether any advances were made nor any evidence that Mrs. Smith had repaid any monies advanced in full thereby triggering Citibank's need to file a certificate of satisfaction. Refund Recovery's petition only "dispute[d]

- 18 -

that any sums [we]re due and owing on the credit line secured by the [deed of trust] and . . . demand[ed] strict proof of any advances or extensions of credit thereon." I would find that, because no certificate of satisfaction had been filed, the circuit court was correct to assume that there were outstanding amounts left due and owing on the credit line until it was presented with evidence to the contrary. Indeed, I view this presumption as simply requiring Refund Recovery to satisfy its burden of proof as the party petitioning for any remaining surplus funds in excess of liens chargeable against the subject property.[1] Hence, I do not believe that this particular presumption "was not well grounded" or premature.

However, I do agree that the circuit court prematurely dismissed Refund Recovery's petition without holding a hearing at which Refund Recovery could have put on evidence to satisfy its burden of proof[2] or at which the circuit court could have considered its contention that the application of Code § 58.1-3967 would effectuate an unconstitutional taking. Thus, I concur.

---

[1] I recognize that Citibank—the named beneficiary of the deed of trust—may ultimately have failed to come forward in this case. But in general, presuming that an unpaid debt remains on a credit line secured by a deed of trust protects the interests of secured creditors—particularly those "unknown beneficiar[ies]" of a lien who are, by statute, allowed two years to make a "claim for payment of the indebtedness secured by a[] lien chargeable" on the real property sold at a tax sale. Code § 58.1-3967; *see McKeithen v. City of Richmond*, 302 Va. 422, 433 (2023).

[2] While a surplus claimant must prove the existence or non-existence of any liens chargeable against a property (and if they exist, the amount they secure) in order to demonstrate entitlement to surplus proceeds, proving such entitlement should be fairly straightforward if the amount of liens chargeable against a property are ascertained *before* the confirmation of a sale, as is done when a creditor sues to effect the sale of a debtor's real property. *See* Code § 58.1-3967 ("Except as modified by statute, [tax-sale] proceedings shall be conducted in accordance with any requirements arising from statute or case law for a creditor's equitable claim to effect the sale of real estate to enforce a judgment lien."); *Tackett v. Bolling*, 172 Va. 326, 332 (1939) (restating the general principle that liens must be ascertained and their amounts fixed before a court may decree a sale to satisfy a judgment lien); *City of Fairfax v. Wards, Inc.*, 98 Va. Cir. 320, 328-30 (Fairfax Cnty. 2018) (holding "that in a judicial proceeding to sell tax delinquent realty the liens against properties subject to sale must be determined at or before the time of the entry of the decree of confirmation of sale"). Here, there is no indication that the amount of Citibank's lien chargeable against the subject property was ever ascertained by the circuit court before it confirmed the sale.